# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

---

|  |  |  |
|---|---|---|
| **FRANK W. JACKSON**<br>**102 Pasture Lane**<br>**Yorktown, VA  23693** | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. |
| **HANSFORD T. JOHNSON**<br>**Acting Secretary of the Navy**<br>**1000 Navy Pentagon**<br>**Washington, D.C.  20350-1000** | ) ) ) ) ) | |
| Defendant. | ) ) | |

---

## COMPLAINT

1. Plaintiff Frank W. Jackson brings this action for injunctive relief and damages based on the denial of his rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000-e , *et seq*. (hereafter "Title VII") and the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq*. (hereafter "ADEA").  The Department of the Navy discriminated  against Plaintiff Jackson on the basis of his age (12/19/46), race (African-American) and sex (male) when it did not select him for the position of Supervisory Contract Specialist, GS-1102-13, in violation of his rights under Title VII and the ADEA.

## JURISDICTION AND VENUE

2. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 1343(a)(3), and 1343(a)(4), 42 U.S.C. § 2000e-5, and 29 U.S.C. § 626.

3. Pursuant to 28 U.S.C. § 1391(e) and 42 U.S.C. § 2000e-5(f)(3), venue is proper in the District of Columbia which is the location where Defendant has its principal office and where, upon information and belief, the employment records relevant to the Complaint are located.

## PARTIES

4. Mr. Frank Jackson is presently employed by the Department of the Navy, Military Sealift Command, Atlantic, (hereafter, "MSC" or the "Agency"). MSC's personnel records indicate that Mr. Jackson is employed as a Contract Specialist, GS-1102-12. However, despite his qualifications and over 15 years of service with the Department of the Navy, MSC has consistently denied him a promotion to a GS-13 position. Mr. Jackson was born on December 19, 1946, and was over forty (40) when the discriminatory acts alleged herein occurred. Mr. Jackson is an African-American male.

5. Defendant Hansford T. Johnson is the Acting Secretary for the Department of the Navy. The Acting Secretary is being sued in his official capacity as provided by law based on his executive responsibility for administering MSC personnel policies and his responsibility to enforce and to promote equal employment opportunity throughout the MSC. During the relevant time period, the Department of the Navy employed over 500 employees.

6.  Deidre D. Rumsey is not a Defendant in this lawsuit but was named in Mr. Jackson's EEO and EEOC complaints as a discriminatory official.  Ms. Rumsey is the Director, Contract and Business Management, and Mr. Jackson's second level supervisor.  Ms. Rumsey is one of the management officials most directly involved in taking adverse actions against Mr. Jackson because of his age, race and sex.  Ms. Rumsey was one of the Agency officials directly responsible for denying Mr. Jackson a promotion to the GS-13 level and creating a pretext to hide her discriminatory motives.

## FACTS

### Background

7.  Mr. Jackson has held the position of a Contract Specialist since 1984.  In that position he has accumulated a vast knowledge of contract warrants and spent a large portion of his time in shipyards as a Contract Administration Officer ("ACO") responsible for on-site administration.  Further, during Mr. Jackson's tenure, he has been entrusted with a $1 million warrant and has had oversight for ship repair overhaul and conversion contracts valued at over one hundred million dollars.

8.  Mr. Jackson also obtained a Bachelor's Degree in Business Management from Fairleigh Dickson University in 1979 and a Master's Degree in Professional Arts from New York University in 1987.  Based on his background, Mr. Jackson has accumulated an in depth understanding and experience in ship repair contracts.

9.  During his tenure with the Agency, Mr. Jackson has served in the very position at dispute.  Specifically, from February 1992 until June 1996, Mr. Jackson served as a Supervisory Contract Specialist, GS-1102-12 until a base closure relocated his position.

Part of his duties included delegating contracting officer authority, supervising contracting specialists and serving as a delegated ACO. The contracting specialists under his supervision performed on-site contracting administration and Mr. Jackson coordinated, advised, set goals, managed contractors and reported on the contracts he was assigned.

10. In his capacity as a Supervisory Contract Specialist, one of Mr. Jackson's greatest accomplishments was successfully directing contract administration for ship repair and overhaul projects with no claims filed by contractors against the ship repair branch. Indicative of Mr. Jackson's performance was that he received an outstanding performance appraisal rating.

11. To add to his accolades, Mr. Jackson also served in a Professional Enhancement Program for a year and worked with the Under Secretary for Environmental Security at the Pentagon. He also completed a course in Personnel Management for Supervisors and Managers. Of particular significance, Mr. Jackson received a Defense Acquisition Workforce Improvement Act ("DAWIA") Level III Certification for contracting in 1998, a requirement for the disputed position.

12. Mr. Jackson has a demonstrated track record of supervisory skills, contract warrants, on-site administration, tenure in the Supervisory Contract Specialist position, albeit, at a lower GS-level, and educational achievement that distinguished him as the best candidate for the disputed position.

**Application Process**

13. Mr. Jackson applied for the position of Supervisory Contract Specialist, GS-1102-13, the position at dispute, at MSC, Atlantic. Despite his qualifications, however, the Agency

manipulated the selection process to deny him the promotion on October 5, 2003. The Agency, and Deidre Rumsey in particular, preferred to give the promotion to a younger, Caucasian female, with far less experience and who lacked the requisite educational level for the position.

14. Ms. Rumsey, the Director of Contracts and Business Management, was the recommending official for the disputed position. In addition, Ms. Rumsey was in charge of putting together the panel to review resumes and interview the candidates. She was also one of the interviewers. She ultimately made the recommendation to the selecting official, the then Commodore and Commanding Officer of the Military Sealift Command.

15. Ms. Rumsey was aware of Mr. Jackson's performance, and his job duties and responsibilities, because she was consulted by Sandra Tyree, Mr. Jackson's first line supervisor, concerning his performance evaluations, recommendations for awards and other personnel actions.

16. Ms. Rumsey exercised control over the recruitment process thereby being able to pre-determine who would be considered for the position. That is, Ms. Rumsey returned each selection certificate proffered by the Human Resources Office ("HRO") until she got the candidate she wanted on the certificate, Jamie Filler. At that point, she then implemented a subjective interview process to provide the pretext she needed to justify the selection of an inferior candidate, Ms. Filler, compared to Mr. Jackson's qualifications.

**Selection Process**

17. In June 2002, when it was known that the then incumbent for the Supervisory Contract Specialist position was intending to retire, Ms. Rumsey selected three (3) individuals to serve on the interview panel, namely Achille E. Broennimann and Kenneth D. Allen,

both of whom were Caucasian males and held positions as Supervisory Contract Specialists. Ms. Rumsey also selected Francis W. Cunningham, a Caucasian male who served as an Engineering Supervisor and who was a co-worker of Mr. Jackson. As an Engineering Supervisor, Mr. Cunningham would be working directly with the individual selected for the position. Both Mr. Cunningham and Ms. Rumsey, having worked with Mr. Jackson, were aware of his experience, background and qualifications for the position.

18. Although the selection process began in June/July 2002, because of Ms. Rumsey's numerous distortions of the process, the position remained vacant until October 2003, more than a year after the process was initiated.

19. Specifically, the selection process began with a STAIRS inquiry or search by HRO. STAIRS is a system used by HRO to select candidates for job vacancies. It is basically a resume bank where individuals can post their resume. HRO did the STAIRS inquiry based upon the parameters provided by Ms. Rumsey. No external announcements were made and all of the candidates worked for the Department of Defense. Ms. Rumsey received a list of the eligible candidates around July 2002, but only two (2) MSC candidates were on the STAIRS certificate. According to Ms. Rumsey, she allegedly believed there were more MSC candidates that were interested in the position so she returned the certificate or STAIRS inquiry to HRO without making a selection.

20. Ms. Rumsey's rationale, that she needed more MSC employees, is a pretext. Absent from the candidate list on the first STAIRS inquiry in July 2002 is the name of the person ultimately selected – Ms. Filler. Because Ms. Rumsey could not make her pre-determined selection of Ms. Filler from the first certificate provided by HRO, she had to

reject it.   Returning the selection certificate to HRO without any selection being made was an irregular or rare occurrence.

21. Due to the fact that the STAIRS inquiry did not produce the candidate she wanted, Ms. Rumsey then tried an external announcement for the second iteration of the selection process.  Unlike the STAIRS inquiry, an external announcement actually is a physical job announcement that is posted.   Also an external recruitment meant that veterans' preference would apply and Ms. Rumsey could not pass over a veteran to select a non-veteran.  Ms. Rumsey approved the vacancy announcement before it was posted.

22. In response to the external announcement, a Certificate of Eligibles was issued by HRO in February 2003 which contained the names of five candidates.  Of the five candidates, it appears that three had veterans' preference.  Although Ms. Filler's name finally appeared on this certificate, Ms. Rumsey was not free to select her because she was limited to selecting one of the three candidates with veterans' preference.

23. Yet again, Ms. Rumsey returned the Certificate without making a selection, claiming that she allegedly knew there were more individuals that were interested in applying for the position but who were not on the certificate.  At this point, it had been several months since the position had been vacant.  Evidently, Ms. Rumsey preferred to leave the job vacant, rather than fill it with eligible candidates

24. For the third iteration of the selection process, Ms. Rumsey went back to the original recruitment method, STAIRS, which she had previously claimed had not come up with sufficient MSC candidates.  This time four (4) MSC employees were included in the certificate list, but Ms. Filler's name was not among those that appeared on the certificate.  Not surprisingly, Ms. Rumsey initiated yet another selection process.

25. For the fourth attempt, Ms. Rumsey decided to develop a solicitation of interest (SOI). The SOI was restricted to MSC candidates. As such, there was no public announcement, eliminating having to comply with the issue of Veterans' preference.

26. Unlike the STAIRS recruitment, the SOI allowed Ms. Rumsey to personally send an email to all MSC LANT employees about the position. Interested candidates were advised to contact Ms. Rumsey directly and provide her their resume. The SOI proved to be an effective instrument to control the recruitment process and to insure that the employee(s) she wanted, i.e., Ms. Filler, were included on the certificate.

27. For example, the SOI allowed Ms. Rumsey to recruit two contract specialists at headquarters who had expressed an interest in the position to her. These two employees, Sue Lake and Jan Hansen, were GS-1102-13 Caucasian females and the position would have been a lateral hire. However, the SOI was not sent to all GS-1102-13s - it was sent only to those two female Caucasian employees.

28. Ms. Rumsey's utilization of the SOI enabled her to craft a certificate that had the candidates that she wanted. Ms. Filler, the Caucasian female selectee finally appeared on the certificate without any Veterans' preference issues blocking her consideration.

**<u>Interview Process</u>**

29. Ms. Rumsey next turned her attention to manipulating the interview process in order to ensure that the process would be highly subjective. For instance, the interview questions were not developed by HRO, but created by Ms. Rumsey who 'cut and paste' from some interview questions that had allegedly been used for the position years earlier. Because of this, Ms. Rumsey never took steps to ensure that the questions were tailored to the specific KSAs of the position.

30. Equally significant, is that there was no relative weighting of the questions used by Ms. Rumsey. Instead, she simply assigned each question ten (10) points, regardless of the difficulty or subject matter.

31. The questions created by Ms. Rumsey also completely ignored the expertise, experience and knowledge of the candidate. Instead, the questions focused on situational or hypothetical problems and the potential candidates were judged on the panel's subjective belief of how well they believed the candidate responded to the questions. As a result, a candidate's background was not the primary consideration. A candidate's qualifications only played a role if the candidate could come up with a way to incorporate relevant experience into a response to the hypothetical questions posed.

**<u>Frank Jackson was better qualified than Selectee Jamie Filler</u>**

32. The biased and subjective manner in which the interview process was conducted failed to differentiate between the evident inconsistencies in education and experience that made Mr. Jackson a far more qualified candidate than Ms. Filler.

33. For example, Ms. Filler only had an Associate degree, whereas Mr. Jackson had a Masters Degree. OPM regulations for the Contract Specialist position, GS-7 to GS-12 require a four year course of study, which Mr. Jackson satisfied, but Ms. Filler did not.

34. Ms. Filler also lacked the necessary credentials for the position because did not have a DAWIA Level III certification – she only had Level II certification. Mr. Jackson, on the other hand, has had the required Level III certification since 1998.

35. Mr. Jackson also had more experience than Ms. Filler. Whereas Mr. Jackson had performed contract specialist duties with MSC since 1984, Ms. Filler had only been a

contract specialist with MSC since 1992, with a year's prior experience with the U.S. Coast Guard.

36. Ms. Rumsey's subjective decision-making resulted in the selection of a younger, Caucasian female, who did not meet the qualifications of the position, over Mr. Jackson, an older African- American male who possessed substantial qualifications and experience.

37. Yet another factor suggestive of the Agency's illegal discriminatory motives is the fact that another candidate for the position, Carrodena D. Johnson, also filed a Formal Complaint of Discrimination against the Agency when she was not selected. In her complaint, similar to Mr. Jackson, Ms. Johnson asserted that the selected candidate, Ms. Filler, was less qualified because she lacked advanced education and the Level III certification.

**Conclusion and Summary.**

38. Despite his superior qualifications, the Agency denied Mr. Jackson a promotion Supervisory Contract Specialist, GS-1102-12.

39. Defendant's unlawful actions have interfered with Mr. Jackson ability to advance his career and have significantly harmed his professional reputation. By preventing Mr. Jackson from attaining a promotion, MSC management has effectively undermined Mr. Jackson's career. Mr. Jackson has suffered objectively tangible harm because of the unlawful actions of Defendant.

40. As a direct and proximate result of the intentional acts of MSC and/or agents or employees acting on its behalf, Mr. Jackson has suffered grievous harm to his career and professional reputation and continues to suffer such harm. These injuries and losses

include, but are not limited to, loss of substantial past and future salary, benefits and entitlements, loss of professional status and career-enhancing opportunities and loss of retirement savings and benefits.

41. As a direct and proximate result of the intentional acts of MSC and/or agents or employees acting on its behalf, Mr. Jackson has suffered grievous harm to his health. Defendant has caused Mr. Jackson to suffer from emotional distress, depression, anxiety, embarrassment, humiliation, pain and anguish.   This severe emotional damage has resulted in physical manifestations of stress caused by the discriminatory actions of MSC and its agents.

## EXHAUSTION OF REMEDIES

42. Mr. Frank Jackson exhausted all administrative requirements that apply to the processing of his complaint, including the filing of a formal complaint with the MSC's EEO office and an EEOC complaint.  Mr. Jackson timely filed this Complaint after receiving the Agency's Final Agency Decision.

## STATEMENT OF CLAIMS

**COUNT I:**     Age Discrimination in Violation of the ADEA:

43.  Mr. Frank Jackson re-alleges paragraphs 1-42 and incorporates them fully herein.  Mr. Jackson additionally alleges that Defendant, and/or agents or employees acting on its behalf, has discriminated against him on the basis of his age (12/19/46) by denying him employment opportunities and subjecting him to adverse and disparate treatment.  Mr.

Jackson further alleges that these acts violate the ADEA, as well as the statutory provisions and regulations that specifically apply to the federal government as an employer.

44. As a direct and proximate result of the intentional acts of Defendant and/or agents or employees acting on its behalf, Mr. Jackson has suffered grievous harm to his career and continues to suffer such harm. These injuries and losses include, but are not limited to, loss of past and future salary, benefits and entitlements, loss of professional status and career-enhancing opportunities.

45. As a direct and proximate result of the intentional acts of Defendant and/or agents or employees acting on its behalf, Mr. Jackson has suffered emotional distress, humiliation, pain and anguish, as well as damage to his professional career and reputation.

46. As a consequence of Defendant's actions, Defendant is liable to Mr. Jackson for those damages as well as for attorneys' fees, the costs of this litigation, and accrued interest.

**COUNT II:**    Race Discrimination in Violation of Title VII:

47. Mr. Frank Jackson re-alleges paragraphs 1-46 and incorporates them fully herein. Mr. Jackson additionally alleges that Defendant, and/or agents or employees acting on its behalf, has discriminated against him on the basis of his race (African American) by denying him employment opportunities and subjecting him to adverse and disparate treatment. Mr. Jackson further alleges that these acts violate Title VII of the Civil Rights Act of 1964, as amended, as well as the statutory provisions and regulations that specifically apply to the federal government as an employer.

48. As a direct and proximate result of the intentional acts of Defendant and/or agents or employees acting on its behalf, Mr. Jackson has suffered grievous harm to his career and continues to suffer such harm.  These injuries and losses include, but are not limited to, loss of past and future salary, benefits and entitlements, loss of professional status and career-enhancing opportunities.

49. As a direct and proximate result of the intentional acts of Defendant and/or agents or employees acting on its behalf, Mr. Jackson has suffered emotional distress, humiliation, pain and anguish, as well as damage to his professional career and reputation.

50. As a consequence of Defendant's actions, Defendant is liable to Mr. Jackson for those damages as well as for attorneys' fees, the costs of this litigation, and accrued interest.

**COUNT III:**  Sex Discrimination in Violation of Title VII:

51. Mr. Frank Jackson re-alleges paragraphs 1-50 and incorporates them fully herein.  Mr. Jackson additionally alleges that Defendant, and/or agents or employees acting on its behalf, has discriminated against him on the basis of his sex (male) by denying him employment opportunities and subjecting him to adverse and disparate treatment.  Mr. Jackson further alleges that these acts violate Title VII of the Civil Rights Act of 1964, as amended, as well as the statutory provisions and regulations that specifically apply to the federal government as an employer.

52. As a direct and proximate result of the intentional acts of Defendant and/or agents or employees acting on its behalf, Mr. Jackson has suffered grievous harm to his career and continues to suffer such harm.  These injuries and losses include, but are not limited to,

loss of past and future salary, benefits and entitlements, loss of professional status and career-enhancing opportunities.

53. As a direct and proximate result of the intentional acts of Defendant and/or agents or employees acting on its behalf, Mr. Jackson has suffered emotional distress, humiliation, pain and anguish, as well as damage to his professional career and reputation.

54. As a consequence of Defendant's actions, Defendant is liable to Mr. Jackson for those damages as well as for attorneys' fees, the costs of this litigation, and accrued interest.

## RELIEF SOUGHT

WHEREFORE, Plaintiff respectfully requests this Court to:

A.    Enter judgment for Plaintiff against Defendant on all Counts.

B.    Declare that the conduct of Defendant is in violation of the Age Discrimination in Employment Act;

C.    Declare that the conduct of Defendant is in violation of Title VII of the Civil Rights Act of 1964, as amended;

D.    Award Plaintiff equitable relief, such as back pay, front pay, future losses, loss of benefits, and other economic losses and entitlements retroactive to the date of the unlawful action found to have occurred in this case;

E.    Order Defendant to promote Plaintiff into the position of Supervisory Contract Specialist, GS-1102-13 and/or into a comparable GS-13 level position;

F.    Enjoin Defendant from future retaliation and discrimination against Plaintiff;

G.    Award Plaintiff compensatory damages for the injuries and losses that he suffered in an amount to be proved at trial;

H.      Order Defendant to pay all reasonable attorneys' fees, court costs, and expenses incurred by Plaintiff as a result of Defendant's actions and inactions, as well as pre-judgment and post-judgment interest; and

I.      Order such other equitable and legal relief as the Court deems necessary and appropriate.


## **JURY DEMAND**

Plaintiff requests a trial by a jury of his peers as to all claims set forth in this Complaint.


Respectfully submitted,


_____
Camilla C. McKinney, Esq.
D.C. Bar No. 448776
Law Offices of Camilla C. McKinney, PLLC
1100 Fifteenth Street, N.W., Suite 300
Washington, D.C.  20005
(202) 861-2934 (telephone)
(202) 517-9111 (facsimile)

***Attorneys for Plaintiff Frank W. Jackson***